UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANVAR ABDULSALAM,                 **Docket No.:** 23cv5508

    Plaintiff,

v.                                                                 **COMPLAINT**

JPMORGAN CHASE BANK, N.A.,

    Defendant.

_____/

By and through the undersigned counsel, Plaintiff Anvar Abdulsalm ("Plaintiff" or "Mr. Abdulsalam"), alleges as follows:

## INTRODUCTION

1. Mr. Abdulsalam is an immigrant from India who came to the United States in 2017 in pursuit of a better life.

2. He has spent the last six (6) years working to contribute to his life's savings – money that he dreamed of one day putting towards a house in his name.

3. In those years, Mr. Abdulsalam was a dedicated worker and saved $98,000.00. He finally was at the place in his life where he could purchase his home.

4. After signing contracts, inspecting the property, and building anticipation, all Mr. Abdulsalam had to do was leave the down payment with the money he had saved for years.

5. But on the morning of May 4, 2023, everything changed. Mr. Abdulsalam woke up to four over-the-phone authorization codes (access codes) from Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase") in his messages, and to his disbelief and horror, his $98,000.00 was missing.

1

6. Mr. Abdulsalam immediately contacted Chase – the bank in which he entrusted his life's earnings – to report and dispute the problem and was assured that they were going to investigate the claim and get him his money back.

7. Chase **told** Mr. Abdulsalam that an unknown person(s) had somehow gained access to his social security number and had added an alternative phone number to the account, then requested that the access codes be sent to the new number. Chase then sent access codes to the alternative number, where the unknown person(s) was able to receive them and authorize the fraudulent transfer.

8. Mr. Abdulsalam's bank statements for his personal and business account show a transfer made on May 4, 2023, of $98,000 from his business account to his personal account, then subsequent wire transfer of the $98,000 to "Clm Business Services LLC" in Chicago, Illinois.

9. Mr. Abdulsalam has never even heard of "Clm Business Services LLC" in Chicago, Illinois and certainly did not give them access to his account nor did he ever initiate a transfer of his life's savings to this unknown entity.

10. After months, all Mr. Abdulsalam has is a letter from Chase erroneously denying his claim. **As of the date of this filing, Mr. Abdulsalam still does not have his money**.

11. Chase claims that Mr. Abdulsalam authorized the transfer or benefitted from it, but it is clear that this fraudulent transfer has caused Mr. Abdulsalam nothing but grief and severe emotional distress.

12. Chase did not investigate the claim, because if they had, they would have seen that an unknown person(s) had fraudulently stolen Mr. Abdulsalam's information, including his social security number, to initiate the wire transfer of his $98,000.00.

13. He has lost his opportunity to purchase his dream home, his life's savings, his hope for his financial future, and his trust in Chase.

14. The gross invasion of privacy he has suffered coupled with the offensive indifference of Chase has left Mr. Abdulsalam with nowhere to turn except to seek legal remedies for his damages.

## PRELIMINARY STATEMENT

15. Plaintiff brings this action against Defendant, for damages arising out of Defendant's violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*

16. The EFTA is intended to protect individual consumers engaging in electronic transfers. (See EFTA § 1693(b)).

17. An "unauthorized electronic fund transfer" as defined by the EFTA is "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." § 1693a(12).

18. A financial institution is required to investigate a consumer's claim of error, determine whether an error has occurred, and report the results of such investigation to the consumer within ten (10) days. If no error is found, the financial institution is required to mail an explanation of the findings and include notice of the right to request reproductions. § 1693f(d).

19. Furthermore, in any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that it was authorized, or if it was unauthorized, the burden of proof is upon the financial

institution to establish that the conditions of liability (i.e.- receiving benefit) have been met. § 1693g(b), § 1693(a).

20. Under the EFTA, the term "unauthorized funds transfer" refers also to a transfer initiated by someone who obtained the access device from the consumer through fraud or robbery. 12 C.F.R. § 205.2(m), Supp. I (Official Staff interpretation on §205.2(m)(3), (4).

21. An "access device" is defined in the EFTA as "a card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic funds transfers." 12 C.F.R. § 205.2(a)(1).

22. An unauthorized user(s) initiated an unauthorized electronic funds transfer of **ALL** of Plaintiff's life's savings, in the amount of $98,000.00, from Plaintiff's account on May 4, 2023.

23. Defendant is a sophisticated financial institution which should be familiar with the requirements set forth in the EFTA.

24. Upon information and belief, Chase has a dedicated fraud department to investigate these types of claims pursuant to the requirements in the EFTA– however, no reasonable investigation could have led to a denial of Plaintiff's claims of fraud.

25. Despite this, Defendant denies error and asserts that the unauthorized transfer either (a) was authorized, or (b) benefitted Plaintiff.

## PARTIES

26. Plaintiff is an individual consumer within the meaning of the EFTA (15 U.S.C. § 1693(a)(6)) and resides at New Hyde Park, NY 11040.

27. Defendant is a "financial institution" as defined by the EFTA (15 U.S.C. § 1693(a)(7)). Defendant's main office is located at 1111 Polaris Parkway, Columbus, OH 43240, with a branch of business located at 219-01 Jamaica Ave, Queens Village, NY 11428.

## JURISDICTION AND VENUE

28. This action arises under the EFTA, 15 U.S.C. § 1693 *et seq.*, and the rules and regulations thereunder. Title 15 U.S.C. § 1693m(g) provides that civil actions brought under the EFTA may be commenced in any United States District Court without regard to the amount in controversy.

29. Defendant does business at its branch located at 219-01 Jamaica Ave, Queens Village, NY 11428, in the Eastern District of New York, and, accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(c).

## FACTUAL ALLEGATIONS

30. Plaintiff is the owner for the Chase account ending in 1353 (the "Account" or "Personal Account"). Prior to the unauthorized funds transfer, Mr. Abdulsalam had kept his life's savings – totaling $98,000.00 – in the Account.

31. Plaintiff had worked for years with Global Liberty Holdings LLC as a purchase manager to build up his financial status and had entrusted Defendant with his earnings.

32. However, on the morning of May 4, 2023, Plaintiff woke up to find that Defendant had processed an electronic funds transfer of his entire life's savings – $98,000.00 – from his Personal Account without his authorization.

33. Plaintiff saw numerous authorization codes sent via text to his phone from Defendant, despite Plaintiff never once initiating an electronic funds transfer nor seeing the codes until the transfer was already processed by Defendant.

34. Specifically, four authorization codes were sent, on the morning of May 4, 2023, at 9:26 A.M., while Plaintiff was sleeping.

35. It is clear that an unauthorized user(s) had been attempting to obtain the authorization code to allow Defendant to process the unauthorized electronic funds transfer from the Account.

36. Plaintiff never authorized the unauthorized electronic funds transfer.

37. Immediately after waking up and seeing the codes, Plaintiff checked his Personal Account and saw that the entirety of his life's savings – $98,000.00 – had been transferred without his authorization.

38. Plaintiff's bank statements for Plaintiff's business account ending in 9299 ("Plaintiff's business account") from Chase for the period of April 29, 2023, to May 31, 2023, show a transfer withdrawal of $98,000 from Plaintiff's business account to Plaintiff's Personal Account on May 4, 2023.

39. Plaintiff's bank statement from Plaintiff's Personal Account from Chase for the period of April 13, 2023, through May 10, 2023, show that the transfer deposit was made in Plaintiff's Personal Account from Plaintiff's business account for $98,000 on May 4, 2023. The $98,000 was promptly transferred from Plaintiff's Personal Account via the fraudulent domestic wire transfer to "Wells Fargo NA/121000248 A/C: Clm Business Services LLC Chicago IL 60603."

40. Plaintiff does not know anything about "Clm Business Services LLC" in Chicago, Illinois.

41. Plaintiff called Chase to notify them and dispute the unauthorized electronic funds transfer around 11:52 A.M. on May 4, 2023. Plaintiff received an authorization code for the call.

42. During this phone call between Plaintiff and Chase, a representative of Chase told Plaintiff that the unknown unauthorized user(s) initiated the electronic funds transfer and provided

Chase with Plaintiff's social security number and an alternate phone number to send the codes to.

43. This unauthorized user(s) fraudulently gained access to Plaintiff's sensitive information (his social security number and date of birth) and therefore fraudulently gained access to the code needed to authorize the transfer.

44. Despite **four** codes being sent to Plaintiff's phone, then an alternate phone number given by the unauthorized user(s) to gain access to the codes, Chase still authorized the wire transfer of the total account balance.

45. During the same phone call between Plaintiff and Chase, Chase assured Plaintiff that he would receive his money back and that the decision would be officially made within six days from May 4, 2023. Plaintiff also told Chase not to authorize any transfers of any kind unless Plaintiff himself physically went into a Chase branch and presented his photo ID.

46. When Plaintiff still had not received his money by May 12, 2023, Plaintiff went to a local Chase branch near him to dispute the unauthorized electronic funds transfer.

47. During this May 12, 2023 visit, a Chase representative had Plaintiff confirm his account information, and he learned that the alternative phone number the unauthorized user(s) had fraudulently added to his account had been removed.

48. On that same day, Plaintiff was assured that Chase was investigating the claim and he would receive his money. Chase did not tell him anything about whether his claim was denied, even though, as he came to find out, it had been denied three days earlier.

49. Upon returning home after the Chase visit on May 12, 2023, Plaintiff saw a notice in his Chase mobile app, dated May 9, 2023, wherein Defendant stated that his claim had been denied and it had determined that the unauthorized electronic funds transfer was

"authorized or you received benefit from the item(s)." Defendant also stated that it was not reimbursing Plaintiff's account. Defendant did not include notice of Plaintiff's right to request reproductions.

50. Plaintiff was shocked, confused, frustrated, and distressed to learn about Chase's decision. Even though he had just visited the branch, no one at the branch indicated that a decision on the investigation had already been made.

51. On May 25, 2023, Plaintiff filed a police report regarding the unauthorized electronic funds transfer with the 105th New York Police Department precinct in Queens Village, New York.

52. Plaintiff then sent a dispute notice, dated May 26, 2023, to Defendant, wherein he stated "On May 4, 2023, an unauthorized wire transfer was made on my account in the amount of $98,000. Upon learning of the fraud, I immediately contacted chase and notifying them of the unauthorized transactions. Despite me never providing authorization, chase unilaterally processed the transaction. This is my second dispute. My previous dispute was denied, which is outrageous. This money was my life's savings. I have reported this to the police and demand Chase correct this dispute immediately."

53. Plaintiff went again to a Chase branch on June 6, 2023 to inquire about his claim, but he was told that they needed more information regarding the police report and nothing could be done at this time, nor could they give him a timeline of possible resolution.

54. As of the date of this filing, Plaintiff still has not been reimbursed for the loss of his life's savings by Defendant.

*Damages*

55. As a direct and proximate result of Defendant's EFTA violations, Plaintiff has suffered actual damages, both monetarily and emotionally.

56. Plaintiff has lost, at minimum, his $98,000.00 worth of life's savings.

57. With the aforementioned money, Plaintiff had planned on purchasing a home in his own name. He was going to use the money as a down-payment.

58. Plaintiff had begun working with Coldwell Banker Realty ("CBR") in regard to purchasing a home, and Plaintiff had signed a realtor agreement with CBR, as well as a real estate contract and a buyer's certification for the property listed as 588 Savin Ave, West Haves, Connecticut 06516 on February 13, 2023.

59. On February 13, 2023, Plaintiff also paid in advance a part of the down-payment in the amount of $10,000.

60. Plaintiff was then approved for a loan from Smart Financial Services Corp. on March 18, 2023.

61. The last step for Plaintiff to purchase the home was to provide the down-payment.

62. However, after the unauthorized user(s) fraudulently initiated and completed an unauthorized electronic funds transfer, Plaintiff was unable to provide the down payment and lost the property.

63. As a result of Plaintiff losing his life's savings, he has suffered severe emotional distress.

64. Plaintiff has suffered from anxiety and panic attacks stemming from his financial insecurity.

65. Plaintiff has dealt with feelings of confusion and the inability to make decisions.

9

66. Plaintiff has suffered from depression, morbid sadness, helplessness, and discouragement, which has led to him letting himself go and engaging in self-destructive acts such as self-isolation.

67. Plaintiff has begun to require taking over-the-counter sleeping pills at night as a result of this incident.

68. Plaintiff has suffered from feelings of inadequacy, humiliation, and embarrassment, and has had to rely on borrowing money from friends just to pay his bills.

69. Plaintiff has been unable to pay rent on his New York City apartment, and instead has had to stay with a friend in Connecticut.

70. Further, Plaintiff has suffered damage to his reputation from his lack of ability to pay the down payment he had previously committed to.

71. Plaintiff has suffered damage to his family – his parents, sister, and sister's child – back in India who rely on him financially. As a result of Defendant's actions, or lack thereof, Plaintiff was suddenly unable to support his elderly parents or pay his sister's dowry to give them a chance for a better life.

72. Plaintiff has suffered from frustration, irritability, lack and patience and tension, which has negatively affected his relationships with other people due to his intense mood swings and general irritable nature.

73. Plaintiff has suffered from symptoms of post-traumatic stress as he continues to relive the problem every single day.

74. Plaintiff has suffered from hypertension and neck pain as a result of his emotional distress.

75. Plaintiff has suffered weight loss, loss of appetite, and upset stomach. He is only able to eat 0-1 times a day, a stark contrast from his previous three meals per day before this unauthorized electronic fund transfer.

76. Plaintiff, who was already skinny, has lost almost 20 pounds as a result of this incident.

77. Plaintiff has suffered from persistent headaches and diminished energy.

78. Plaintiff has felt unmotivated and even dissuaded from going to work, because he feels as though there is no guarantee that another unauthorized electronic transfer of his life's earnings would not happen to him again.

79. Plaintiff has suffered from feelings of emotional vulnerability stemming from the gross invasion of privacy he has had to deal with.

80. Plaintiff has been suffering from this ongoing issue consistently for months. He has had to wake up every morning and know that because of the actions of the unauthorized user(s) and, more pertinently, the actions of Chase, his entire life has changed for the worse.

## FIRST CAUSE OF ACTION

### (Violations of the EFTA (15 U.S.C. § 1693 *et seq.*))

81. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

82. Defendant violated the EFTA under 15 U.S.C. § 1693(f)(a), which requires a financial institution, when notified of a consumer's claim of error that contains identifying account information, the amount of the error, and the consumer's reasons for believing the error is in fact an error, to **investigate the error** determine if an error has occurred and then report the results to the consumers.

83. Plaintiff did everything right by notifying Chase of the error **the same day it occurred**, including information the transfer being unauthorized, the amount in error, and his reason being that he did not authorize the transfer. Plaintiff has also included all of this information in his second dispute sent via a letter sent via certified mail.

84. Chase could not have investigated the error, because if it had it would see that the unknown unauthorized user(s) had fraudulently gained access to Plaintiff's phone and received the authorization codes. Chase would have reasonably seen that Plaintiff himself, the authorized user, had not authorized the transfer and was instead a victim of fraudulent activity causing the unauthorized electronic funds transfer.

85. Further, Chase stated in its letter, denying Plaintiff's claim, that the transfer was either (a) authorized or (b) benefitted Plaintiff. Had Chase investigated the transfer, it would have seen that the transfer was for all of Plaintiff's life's savings for which he had been contributing his earnings to for years. Losing the money in no way benefits Plaintiff. Plaintiff lost the opportunity to purchase a home, has had to rely on friends to pay bills, and has suffered severe emotional distress that has led to physical symptoms as a result of this violation. There is no reasonable explanation for Chase's claim that Plaintiff may have benefitted.

86. Chase also violated the EFTA under 15 U.S.C. § 1693(f)(d) by failing to include in its letter to Plaintiff an explanation for how it came to the conclusion that no error had occurred and omitting the required notice of Plaintiff's right to request productions with the explanation of its findings.

87. As a direct and proximate result of Chase's violations of the EFTA, Mr. Abdulsalam has suffered actual damages comprised of his monetary losses as well as his emotional distress

damages. Mr. Abdulsalam is entitled to recover actual damages under the EFTA § 1693m(a)(1), plus an additional sum from $100 to $1,000, 15 U.S.C. § 1693m(a)(2)(A), plus the cost of the action and a reasonable attorney's fees, § 1693m(a)(3).

88. Because Chase did not provisionally recredit Mr. Abdulsalam's account, nor did they (a) make a good faith investigation of the alleged error or (b) have a reasonable basis for believing they should deny Mr. Abdulsalam's fraud claim, Mr. Abdulsalam is also entitled to recover treble damages pursuant to § 1693(f)(e) and § 1693(m)(a)(1).

## SECOND CAUSE OF ACTION

### (Negligence)

89. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

90. Defendant owed Plaintiff, its customer, a duty of ordinary care.

91. Defendant breached this duty as follows:

   a. Defendant failed to exercise ordinary care in that it did not conduct a reasonable investigation into Plaintiff's claims of fraud, despite an overwhelming amount of evidence indicating that the unauthorized user(s) who initiated the fraudulent electronic transfer was **NOT** Mr. Abdulsalam.

   b. Defendant issued only vague explanations regarding its denial of Plaintiff's claims and failed to provide Plaintiff with notice of his right to request documents.

   c. Defendant failed to exercise ordinary care by allowing fraudulent transfers to be made on Plaintiff's accounts.

92. As a direct and proximate result of Defendant's breach of its duty to exercise ordinary care, Plaintiff suffered severe actual and emotional distress damages.

93. As a result, Plaintiff is entitled to damages.

### THIRD CAUSE OF ACTION

**(Breach of contract regarding Mr. Abdulsalam's Chase account agreement)**

94. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

95. Upon information and belief, Plaintiff entered into a standard bank agreement with Defendant for Plaintiff's bank account which set out the terms of the account.

96. Upon information and belief, the agreement between Defendant and Plaintiff included a guarantee that consumers will not be held liable for fraudulent transfers or withdrawals made by unauthorized users using their account.

97. Upon information and belief, Defendant breached this contract by holding Plaintiff liable for the funds stolen through an unauthorized electronic transfer initiated by an unauthorized fraudulent user(s).

98. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has incurred damages in an amount to be determined at trial but amounting to no less than $98,000 in financial losses.

### FOURTH CAUSE OF ACTION

**(Breach of Duty of Good Faith and Fair Dealing)**

99. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

100. Section 1-203 of the New York State Uniform Commercial Code imposes an obligation of good faith in the performance of any contract.

101. Section 4-103 of the New York State Uniform Commercial Code states that no bank may disclaim responsibility for its own lack of good faith or its failure to exercise ordinary care in the performance of its obligations.

102. Furthermore, New York law provides that all contracts contain an implied covenant of good faith and fair dealing in the course of performance.

103. Defendant breached its duty by acting in bad faith and holding Plaintiff liable for fraudulent unauthorized electronic transfers from his account.

104. As a direct and proximate result of Defendant's breach of the duty of good faith and fair dealing, Plaintiff is entitled to damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

**(Intentional Infliction of Emotional Distress)**

105. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

106. Defendant is liable for the intentional infliction of emotional distress to Plaintiff through its intentional or reckless disregard for causing Plaintiff debilitating emotional distress.

107. Defendant engaged in repugnant and shocking conduct by the following:

   a. Its failure to complete a reasonable investigation into Plaintiff's claims.

   b. Subsequently denying Plaintiff's claims when the overwhelming evidence suggests that Plaintiff is the victim of a fraudulent unauthorized transfer AND Plaintiff did not benefit from the transfer whatsoever.

108. Defendant acted in this regard intentionally.

109. Alternatively, Defendant acted with reckless disregard for the severe debilitating emotional distress it would cause to Plaintiff.

110. As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe emotional distress that has included, but is not limited to those set out in paragraphs 55-80 herein.

111. As a result, Plaintiff is entitled to damages in an amount to be determined at trial.

## DEMAND FOR TRIAL BY JURY

112. Plaintiff hereby respectfully requests a trial by jury for all claims and issues in his Complaint to which he is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against Defendant:

A. Enter judgement for Plaintiff on the causes of action;

B. Enter an injunction requiring Defendant to comply with the EFTA and to train its employees accordingly;

C. Award actual, statutory, consequential, and punitive damages to Plaintiff;

D. Award reasonable attorney's fees and costs to Plaintiff; and

E. Award such other and further relief as may be just, equitable, and proper.

Dated: July 20, 2023

                                              Respectfully submitted,

                                              _____

                                              Subhan Tariq, Esq.
                                              Tariq Law PC
                                              **Attorney for Plaintiff**
                                              99 Park Avenue, Suite 1100
                                              New York, NY 10016
                                              Telephone: (212) 804-9095
                                              Email: subhan@tariqlaw.com